Good morning, Your Honor. Counsel, I'm Linda Sullivan, representing Jolynn May. With me at counsel table is Tim Lohraff, who's representing Mr. May. With regard to the time, we would like to divide our time on the opening end. I'll be talking about restitution for seven minutes. We'd like to reserve three minutes for rebuttal. Mr. Lohraff will take the remainder of the time. That sounds like seven for you, five for him, three for rebuttal? That's correct. Got it. Okay. Thank you, Your Honor. Your Honor, there are two issues to this appeal, the issue of what the appropriate restitution should be in this case and the issue of loss. On the issue of restitution, at the district court level, Judge Settle ordered the Mays to pay restitution of approximately $69,000 for labor costs that were incurred by the U.S. Post Office prior to the Mays' actual arrest on December 24th. We believe that ruling was an error as it exceeded the statutory authority for restitution according to statute. As the court, I'm sure, well knows, restitution is solely a matter of statute and what can be allowed by the appropriate statute here, 18 U.S.C. 3663A. Restitution is limited to particular categories of loss and to actual losses approximately caused by the defendant's offenses, unless there's a specific agreement otherwise. Additionally, consequential damages are not allowed under the restitution statute, nor are expenses that are to prevent future crimes or to forestall future criminal activity. Here's a question I had as I was rereading the statute in preparation for this case. For purposes of this section, the term victim means a person directly and proximately harmed as a result of the commission of an offense. What's an offense mean? Is the word offense in this setting restricted to the offenses of conviction or to offenses that they might have admitted, for example, in the PSR? Your Honor, we believe it's strictly the offense of conviction. And here we believe it's the offense of the conviction of theft of mail that they were charged with and that occurred on December 24th. But they were also convicted of possession? They were convicted of possession. And the dates for the conviction of possession are? They're prior to December 24th. I think they're over a – I don't have the exact dates, but they're earlier in December and they preceded the post office decision to stop the mail, to do what they did. So my question then would be, okay, they're possessing stolen mail. They are finally caught and they're convicted of actually stealing mail. The date of that theft is the 24th. It doesn't take much imagination to figure out that the possession count is tied to theft that they themselves have committed. And they're willing to, I guess, admit that when we're dealing with the PSR. Do I get to conclude, for purposes of offense, that they have stolen mail before the 20th? Well, Your Honor. The answer should be no, but then I want to say why. No, Your Honor, you don't get to conclude that. But why? Collaborate on that. Yeah, but why? But then my question is, but why? Well, I think in our reply brief, both our opening and reply brief, we tried to address that. And I think one reason is the element – there's two reasons. One is the elements of the possession of stolen mail do not support the actions of what the post office did. In theory, it could have been stolen by somebody else. It could have been stolen by somebody else. It could have been stolen at an earlier date and just held by them. So certainly we don't think the elements of the possession of stolen mail support that. I think that's right. The second reason is that we think it's not the type of harm that either conviction would support in terms of what the post office did. The post office was clearly responding to thefts of mail, not possession of stolen mail. This was clear by their testimony. And the actions they took were not to address any harm caused by the thefts. It was strictly to prevent future criminal activity, and we don't believe that's allowed under the statute. This is a tricky case because typically there's a burglary and somebody puts an alarm, closes the door after the horse is gone and so on, but it's sort of a generic protection. That's not quite the case here. What we have is a rash of very unusual thefts in East Vancouver. As it turns out, pretty much all of them, maybe all of them, traceable to the maze. And so this is very specific protection, not just generic protection against criminality. This is protection against the maze. Now, at the time they instituted it, they don't know it's the maze, but it turns out that's exactly who it is. Well, I don't know that we can conclude that because of the offensive conviction being December 24th. So as you- Well, again, I guess that goes back to the defense question, of course. It goes back to the issue about the possession of the stolen mail and the elements for that. So I think that all of the cases that we cited in our briefs support the proposition that you can't order restitution for preventing a future crime, which is what was done here. And I think there's even a case where the government conceded that in U.S. v. Wright, where they conceded on an appeal that a person had been convicted of a bunch of burglaries and they installed some security personnel. And on appeal, the government conceded that was not an appropriate issue for restitution. So I think the law is clear in that regard. So under 366A, where it talks about a pattern of conduct, your response as to why the December 24th conviction can't pick up anything predating December 24th is that the pattern of conduct wasn't an element of the conviction for the 24th. That's correct, Your Honor. So even though that they admitted to having engaged in these activities before stealing the mail, for which they were convicted, but in doing what they were doing to support the offensive conviction on the 24th, they admitted to the prior conduct. Correct. Unless it's an element of the crime that had been charged and proved, even though the evidence would be essentially the same. Right. They can't be tied to the restitution, can't be tied to their conduct, as Judge Fletcher said, which clearly caused the post office to react. I think that's correct, Your Honor, and I think there are numerous Ninth Circuit cases which hold that the pattern of illegality has to be an element of the offense. And I think I'm running down my time, and I'll let Mr. Lowraff take over. Thank you, Your Honor. By the way, if somebody asks you a question from the bench, you're entitled to finish it, and I assure you that Judge Fletcher is lenient. It doesn't mean you can go on and on, but don't truncate an answer to a question from the bench, because that's what oral argument is about, is answering our question. I'm a softy. I'm not taking the don't start the clock, just sort of general proposition for oral advocacy on the Ninth Circuit. Panels do differ, presiding judges do differ in terms of how strict they are about the clock. If you have the option available to you and your argument is on, say, Tuesday or Wednesday, come to court the day before, watch how the panel behaves, and you'll get a sense as to whether or not you'd better stop when the red light comes on and so on. If you'd come here yesterday, you would have seen that I'm a bit of a softy. Okay. But we aren't. But I'm presiding. May it please the Court. Thank you, Your Honors. I was going to address the loss amount, unless the Court wants to continue with the restitution, which I'm prepared to do also. As far as the loss amount, the arguments are very similar. There is some difference, because it's a guideline issue instead of a statutory issue. We know that we have to look at 2B1.1, and then we have to look at the statute, the guideline 1B1.3 about relevant conduct. And we know there's still a causation issue, because the Court in U.S. v. Hicks told us that, that there still has to be a causation, and that but-for causation isn't enough. That's a result of Hicks also. In this case, we believe that the eight-level enhancement for loss that the judge settled gave, based upon the same amount as restitution, was inappropriate, because the expenditures by the post office were to prevent future crimes, meaning to prevent packages or parcels being stolen. And we do believe that once the U.S. Post Office delivered the mail, whether it was into a box or an address or a house, that the U.S. Post Office had met its statutory requirements to deliver the mail, and that any thefts are an intervening cause and basically are, by stopping the deliveries to the post office boxes and to houses, the post office was then trying to prevent future crimes, future intervening acts. And I believe that the Court itself made that as a finding. The Court said that one of the things that we have to do, the Court said the temporary expenditure of the post office to stem ongoing criminal activity was reasonably foreseeable and a direct result of the maze activities. But the issue that was discussed on the first part of the argument is similar here, that the indictment and the plea agreements, the theft issue was only tied to December 24th. The stop order went into effect on December 20th, and it resumed, they ceased doing it on the 27th, because they were closed the 25th and 26th. So the question occurs again now, but with respect to guideline language, the meaning of the word offense. Are we talking about offense of conviction, or are we talking about offenses to which they might have admitted? Again, Your Honor, I think that our same position is offense of conviction, and I think that if you look at the indictment, the U.S. Attorney's Office, the government, put a wide range as far as count one, which they are very able to do, and they strictly limited count two to a specific date. So I think they are bound by their own indictment what the grand jury returned. They could have certainly put in count two the same wide-ranging, you know, from. Okay. The Court's reliance on the application notes to three, the application notes 3A to 2B1.1 are also misplaced. Those application notes concern product substitution cases, procurement fraud cases, and offenses under 18 United States Code 1030, none of which are directly relevant to this case, and none of which, regardless of what they refer to, allow restitution for preventative measures to prevent future crimes from occurring. And I think a very good example of that is the government cites the circuit case of war, and in war it was an arsonist that had caused a series of fires. And the circuit found that the costs for setting the current fires that the arsonist, the defendant, had set, was certainly within the range of restitution under the statute and the guidelines. The example here would be if the government wanted to install 15-foot fences with concertina wire or put down fire retardants or send out crews to create fire breaks to deter future fires from being set. I think that's the sort of example that we're looking at here. What the post office did was took drastic action to deter future potential crimes from being committed by the maze or by whoever else, and it's akin to putting up fencing or building fire breaks or even cutting down timber as fire breaks. So the war case, I think, is a perfect example of what is allowed under restitution and laws under the guidelines, and this case is simply a preventive measure and is not allowed as an eight-level enhancement. Okay. You're down to about two-and-a-half minutes if you want to save that time. We'll hear from the government and you can then respond. Thank you very much. Thank you. Good morning, Your Honors, and may it please the Court. Assistant United States Attorney Teal Miller representing the United States. Judge Fletcher, you asked the question, do I get to conclude that they had stolen the mail that they possessed? And the answer to that question is yes, for two independent reasons. First is as a general reason, and that's that the Huey case, which is the Supreme Court case which interpreted offensive conviction and said that you may only be required to pay restitution for your offensive conviction, actually looked at the facts of the conviction that the defendant in that case pled to. Huey does not set up a parlor game in which you ask an abstract question, is it possible to commit this offense without causing this loss? It looks at what the defendant actually pled to. But the only pre-December 24th crime they pled to is possession. Your Honor, and that leads to my second point, which is possession and the offense of possession under this Court's case law, specifically the Baxian case which we've cited, recognizes that a possession offense is not split from a theft offense in the way defendants have suggested. In that case, this Court footnote 3 of the Baxian case says, we reserve for another day the question of whether and when a restitution amount need be apportioned between the individual who actually steals the goods and the individual who merely possesses them thereafter. And I think the clear implication- But that's restitution for deprivation, probably, from the person whose property was stolen? That's restitution for, in that case, it was cartons of gloves that had been stolen. But it's wrongful possession. That's right, Your Honor. And they're wrongfully possessing it to the detriment of the person whose property it is. That's right, Your Honor. So that's a different question that's being saved. I don't think it is, and I'll try and explain why. Okay. The defendant in that case argued, I possess these, but I did not steal them. So the loss was caused by their having been stolen. That's precisely the argument defendants are making here. They're saying, before December 24th, we possessed mail, knowing it had been stolen, because, of course, knowledge that it was stolen is an element of the offense of possession of stolen mail. But whether it's a material distinction or not, in the Maxian case, they're possessing mail that has been stolen, and the restitution is going to the person from whom it has been stolen. The post office, of course, has never owned this, so the restitution is not to an entity from whom this is now wrongfully possessed. Well, that's right, Your Honor. But what the Postal Service is, the Postal Service's loss is not the value of the packages. That's right. But the Postal Service's loss is its channels of distribution to its customers. The Postal Service has a business method. It uses a particular method to get services for its customers, and the maize crime has interfered with or diminished the value or the utility of that, and so they substitute it. I've got that, but I'm trying to figure out how I interpret the word, and it will be the same, really, I think, either for restitution or for loss amount, for purposes of the guideline, what offense means. And I think offense is offense of conviction. Your Honor, one caution. I think, actually, the rule is different with respect to loss and restitution. The guidelines allow you to look at related conduct. Well, even when the word is used in the guideline, offense? Yes, Your Honor. That's right. Do you have a case for that? Your Honor, I'd be happy to supply the Court with one in a latter-after argument. I don't have it at the tip of my fingers. So you've not given me a case in your briefs? We have in the briefs, Your Honor. Okay. And I think the guidelines themselves also make that clear. And, actually, I think the defendants can see that in their reply brief. Well, I know that in many aspects of the guidelines, of course, related conduct is relevant, but I'm not sure it's relevant under this guideline. Okay. Well, let me go back then. Again, I think it is, and I'd be happy to provide a letter to the Court to that effect. And I'm sorry, I don't have a case in my fingers. Please read the letter. Okay. Let me go back to explaining why I think that the statement of facts that defendants agreed to in pleading guilty, which is at pages 173 and 180 of the record, of the excerpts of records, make clear that the defendants in this case, the mail that they possessed, knowing it was stolen, was stolen by them. And this Court doesn't need to ignore that in taking account of what their offense was, even if it limits itself to the particular offense pled to. The indictment says mail stolen from, I think it identifies the initials of 11 different individuals starting at the beginning of December, plus others. And in their statement of facts to which they pled, they acknowledge that on more than four occasions before the post office stopped delivery, they went around and were stealing mail and possessing it. Now, it's true that the offense of conviction covering those dates is possession, but the statement of facts that they pled to acknowledges that they're the ones who stole the mail that they possessed. And, of course, knowledge that it was stolen is an offense. So in their case, their possession offense includes that they stole it, because you have to know it was stolen. Here, the way they knew that is that they're the ones who stole it. I don't think, again, I don't think that just because we must look at the offense of conviction means that we have to look at it in the abstract. You do look at it in the context of the case. And Baxian is helpful even setting aside the fact that it has a helpful ruling to us. Baxian still goes back to the gloves that were stolen, correct? And here we have a situation where they want to stop stealing. And I don't see that Baxian is relevant to that particular question, or maybe I'm wrong. I get my cases mixed up sometimes. Well, Your Honor, it's relevant in the following way. You're right that there is an extra step here in that the harm that's being addressed is the delivery methodology. But the way that harm is caused is theft of packages. So the defendants in this case. But in the Baxian case, the gloves were missing. Your Honor, in the Baxian case, the facts are that the defendant was caught, and he was caught with some subset of the total amount that was. Yes. And they recovered some of the gloves. Yes. They didn't recover all of the gloves. Yes. And the restitution and the guidelines, I think, went to the fact that the judge charged him, in essence, with the gloves that were not recovered. So you still have a crime that is completed. Unlike this case, the crime is completed, but the next step never occurred in Baxian, the next step being the prevention. Well, Your Honor, this is, I agree that there is a distinction in terms of what it is that's being valued for the loss. But for purposes of the Postal Service's loss, its loss was caused by the fact that it was no longer able to deliver the service. Or it chose not to. There's more than one victim to the Mays crime. The Postal Service is a victim. It reasonably chose not to. Correct. Right. How far do you go with that argument? In other words, you have a crime wave. You know that certain people are responsible for this crime wave, but you want to protect the banks. You're going to, you know, charge as restitution and scope of loss, extra bank guards. I mean, how far do you go with this argument? Well, Your Honor, I think there can be hard hypotheticals when the frequency with which banks are being robbed gets lower at what point is the response reasonable. But I don't think this is a hard case. I think in this case, the rash of thefts was so extreme that there's no, there's, it was reasonable for the Postal Service to respond the way that it did. It was substituting its method of getting its service, of providing its service, at the most critical time of the year when people are urgently awaiting Christmas packages, where delivering it a couple days later is a lot less good, a service, than what people have actually paid for. It seems to me, on the question as to whether the Postal Service was acting reasonably, I applaud the Postal Service. I mean, if they're losing all those packages at that time close to Christmas, I think they did a really good thing. But that's not the question. Well, Your Honor, I'm glad that you think the Postal Service did a really good thing. I did, too. And if I could go back to trying to explain why I think Baxian is helpful to us, even though the thing that was stolen there is the thing that we're seeking restitution for. In your answer, before you launch into that, could you address the question that I'm trying to sort out here myself is, there's been a talk about what the Post Office did was to incur expenses to prevent future thefts. Is that, in and of itself, insufficient? Or is there any law that precludes that kind of proximate causation analysis to justify restitution or loss amount? Well, Your Honor, my answer to that is the defendants have used that theme. They've tried to characterize this as an attempt to prevent future thefts. I think that that's wrong. I think the Postal Service was preventing an ongoing crime spree while it was ongoing. If they had kept this delivery methodology in place after the maize had been arrested and tried to seek restitution for that or charge that loss to the maize, perhaps the answer would be different. But they did this while the crime spree was ongoing. And for that reason, I think it's wrong to characterize it as addressed at future thefts. They were protecting their channels of distribution while those channels of distribution were being disrupted. Again, the Postal Service's loss is not packages. The Postal Service's loss is its business model, its channels of distribution. Returning to Baxian, I think it is critical in that case that the – excuse me, Your Honor. The evidence showed, this is quoting from the court, that the gloves that were not recovered were in his control and possession before he was arrested. But when he was arrested, they were gone. And he was still chargeable for restitution with them because even though he wasn't charged with selling them, even though he wasn't charged with stealing them, the evidence showed that he possessed them. But they could have been lost when they were sold or taken away by a third party. The court doesn't say. The court says it doesn't matter when we're looking at this kind of a loss how exactly it was caused. The whole reason possession of stolen goods is illegal is because it creates a market for stolen goods. And the maize created a market by possessing stolen mail in precisely the same way. And that market is what caused the Postal Service's loss. The Postal Service wasn't able to distribute mail effectively to provide the service it wanted to provide as well as it could at this critical time of year because the maize were possessing stolen mail, knowing it had been stolen. And, of course, the facts of this case, the facts that they pled guilty to, were that they were the people stolen. I don't think there's anything in the cases which call, which require the court to look at the offense of conviction that say you have to ignore the actual facts of the crime that they committed. And in this case, there isn't a distinction between the possession offense. But I would feel differently if I thought that the word offense, either in the guidelines with respect to amount of loss or in the restitution statute, if I thought that the word offense meant something other than offense of conviction. Your Honor, I am arguing it means offense of conviction as proved. Not offense of conviction as abstracted, but as proved in the particular case. Well, but as proved, and we get a variation of this in immigration cases in terms of pled, proved, facts, and so on. So, I mean, we're familiar with this problem, although in quite a different context. I'm not at all sure that the words here say, when they say offense, mean the bad things that you did. I think offense means what were you convicted of doing. I agree. Absolutely. The element to the offense. That's absolutely right. But here. So the element to the offense of stolen property possession is the property has been stolen. It doesn't matter by whom. And you're possessing it, knowing that it's stolen. Boom. End of story. Absolutely. But here, the knowledge element is satisfied because the maize themselves stole it. That's how they know it. I understand that, too. But it seems to me that all they need to do is show that it's known, and I'm not sure that they need to show by whom. All they had to do was admit to say, yes, we know. They don't have to say why they know. All they have to do is say, yes, we know. That's right, Your Honor, but that's not what they actually did. What they actually did in this case is admit that they had stolen it. I understand that perfectly. But my question is, what is the bare minimum necessary for conviction? Knowledge and possession is all you need, and it doesn't matter how they know. Your Honor, I agree it doesn't matter. It's possible to convict them of the offense without them knowing in this way. But I think Huey, the Supreme Court's decision which sets forth this rule, this interpretation of the word offense, actually does look at how the offense was committed, as do this Court's cases which interpret offense. You don't have to ignore the facts on the ground. This isn't an abstract question. The question is, how did these people, how did this offense happen? And this offense happened because they were the people possessing the stolen mail. I also think if you step back from that, even if you disagree. Did the government need to prove how they knew? It needed to prove that they knew. That's right. But it matters. But nothing in Huey, nothing in this principle requires you to ignore how they knew when that's part of the record, and it is here. And I think even if you disagree with me, I think Baxian stands for the principle that possession isn't separated from theft precisely because the harm of possessing stolen goods is that they're lost or they interfere with channels by which the lost goods are supposed to be distributed. This Court has already decided that possession and theft are not separated in this way. I think Baxian stands for that principle. I also think that it's worth noting that this is an argument that defendants didn't develop fully until their reply brief and never made to the district court. Well, I read what they did to the district court. This is a somewhat complicated case. I think the question was fully in front of the district court. This is not a plain error. I think the district court understood the nature of the problem. Well, Your Honor, I don't have very much time remaining. It certainly understood that they were challenging whether they were responsible for this loss. I don't think it understood this distinction between possession and theft. Thank you. Thank you, Your Honor. Any further questions from the bench? Your Honor, the government has conceded that the postal service loss is what they characterize as channels of distribution. And, again, I don't think that's compensable under the statute. The postal service did their job when they delivered the mail to the mailboxes. If criminals, whether it's the maize or someone else, then stole the mail, that would be an intervening cause. And what they did was to try to prevent future thefts. Well, but it was an ongoing operation. So you're saying that if they go on a crime spree and you have three days of consistent activity and you take steps to prevent it, that somehow it has no connection? Well, what we raise in our briefing is that it's a slippery slope and there's no principal distinction. How about the facts? That's always a good way to kind of cabin things. Well, as I noted, Your Honor, as I noted, and it's in the record at ER 63, and it was Exhibit 2 attached to a supplemental sentencing memorandum, when the parcel deliveries were reinstated after Christmas, there were actually eight mail thefts reported on December 29th in East Vancouver of 2010. So one of the issues, I think, is also if there's a series of bank robberies in Seattle and every bank hired a security guard to prevent a future robbery and then someone gets caught and charged with a bank robbery, is that person liable for every single bank in Seattle hiring a security guard? Different facts. Counsel for the government is arguing you look at what actually happened in the particular case and what your clients pled or were convicted of in a particular case, and they were convicted of possessing the mail that they actually knew, or the goods that they knew that they had stolen. So it's not something about unrelated to anything that if they were engaged in this activity it should have come as a shock to them that the post office might take steps to prevent them from doing it in the future. Them, not just generally. I understand. But I agree with you, Your Honor, about the facts, but the fact also is that the indictment and the plea agreement are specifically tied to a date. I understand, well, but the stolen property wasn't. How do you respond to the government's argument that with respect to possession, the government has to show knowledge, which they did show, and the way they showed knowledge was actually commonsensical and predictable. Well, I knew because I stole it. And the government says, this is not a bad argument. Well, how they knew for this purpose should be included within our notion of offense. How do you respond to that argument? Well, one, I don't think it does. I think there's a long line of cases that define offense very specifically. And I note that in Baxian, the court itself said Baxian does not argue that he's being ordered to pay restitution for conduct other than the conduct underlying his offense of conviction. So I think offense is defined very strictly in the law. And because the plea agreement does include language about them for supporting count one, that they stole mail prior to December 24th, again, I think it's still the temporal location of count two with December 24th and the grand jury returning that indictment means you cannot open up the definition of offense as much as the court may like to because it's equitable. I need to reread, but you may be able to just point me to the language if it's there in the plea agreement. In the plea agreement, do they say we possessed or do they say we stole and then possessed? What are they pleading to? My client's plea agreement is that facts are 1ER173. Okay, hang on a second. ER173? Correct. And in the first paragraph, it looks like the language is, Defendant Jason May stole mail from authorized depositories for mail, and unlawfully had in his possession such mail knowing it to be stolen. And then it gets more specific as to driving around in a car and so on in paragraphs B, C, and D. And he pled to that. Okay. Yeah. Okay. It looks like my time is up. Thank you. Thank you very much on behalf of Ms. Sullivan and I. Thank you. Thank you, both sides. An interesting, tricky case. Right. Thank you. Thank both of you for your very useful arguments. Nine states versus May, now submitted for decision.
judges: Quist, Fletcher, Fisher